853 P.2d 548

**In re Testamentary Trust Established Under Will of Lloyd H. Klingensmith, Deceased.**

**Annetta HEDRICK, David Winn, as personal representative of the Estate of Harry Klingensmith, Deceased; Joel Klingensmith; Kay Winn; Jeanne Stratton Canfield; Warren Stratton; and Naomi M. Hamilton, Appellants-Respondents on Appeal,**

v.

**WEST ONE BANK, IDAHO, N.A., as personal representative of the Estate of Lourayne E. Klingensmith, Deceased, Respondent-Appellant on Appeal.**

No. 19683.

Supreme Court of Idaho, Boise, January 1993 Term.

March 25, 1993.

Rehearing Denied May 25, 1993.

Holland & Hart, Boise, for appellant. J. Frederick Mack (argued).

Elam, Burke & Boyd, Boise, for respondents Hedrick, David Winn, Joel Klingensmith, Kay Winn, Jeanne Stratton Canfield and Warren Stratton. Robert M. Tyler, Jr., (argued).

REINHARDT, Justice, Pro Tem.

Appellant, West One Bank of Idaho (West One), representing the estate of Lourayne E. Klingensmith, appeals from the district court's order reversing the magistrate's finding that the estate of Lourayne Klingensmith was entitled to the undistributed income of a testamentary trust. We reverse the decision of the district court, and although we affirm the conclusion of the magistrate court, we do so on different grounds.

This action derives from a testamentary trust created in the will of Lloyd H. Klingensmith which was executed on February 26, 1959. The trust came into existence after Mr. Klingensmith's death on May 11, 1966. The trust was created for the bene-

fit of Mr. Klingensmith's mother, Annetta Chipp, and his wife, Lourayne Klingensmith. Annetta Chipp predeceased Mrs. Klingensmith, thus leaving her as the sole beneficiary under the trust. The trust provided that $300 a month was to be paid to Annetta Chipp from the income of the trust, with the remaining balance, if any, to be paid to Mrs. Klingensmith. The trust was to immediately terminate upon the death of both beneficiaries with the corpus of the trust and any "accumulated income" to be distributed to four named remaindermen or their descendants.

Mrs. Klingensmith served as trustee of the trust until 1977 when she was succeeded by West One, which remained the trustee until Mrs. Klingensmith's death on November 19, 1990. At the time of Mrs. Klingensmith's death, the corpus of the trust was valued in excess of $80 million. There was also undistributed trust income which can be categorized as follows: (1) income which had been collected by the trustee but had not been distributed to Mrs. Klingensmith by November 19, 1990; (2) interest which was not due to be paid to Mrs. Klingensmith until after November 19, 1990, but which was accruing to the trust on a day-to-day basis; and (3) an Albertson's dividend which was declared payable to the trust on November 5, 1990, but was not actually paid until after Mrs. Klingensmith's death. The total amount of income for these three categories is approximately $284,000.00, with the Albertson's dividend accounting for the bulk of this amount.

On January 18, 1991, the remaindermen of the trust filed a "Petition for Distribution of Income" seeking all the undistributed income. The remaindermen maintained that the undistributed income was "accumulated income" which they were entitled to under language in the will which states:

This trust shall immediately cease and terminate upon the death of my wife, Lourayne E. Klingensmith, and the death of my mother, Annetta Chipp, which ever happens last, and upon such termination I do hereby give, devise and bequeath the whole of the said trust property then remaining, including all accumulated income thereof, as follows: . . . .

West One, as personal representative of the estate of Mrs. Klingensmith, opposed the petition arguing that the income was not "accumulated income," but was "accrued income," and because it was "accrued income," Mrs. Klingensmith's estate was entitled to receive it under a directive in the will which states that "[t]he Trustee, so long as the trust continues, shall collect and receive all income, revenue and profits arising from, or accruing to, the said trust, and shall pay over and distribute the net income [to Mrs. Klingensmith]." It is noted that the remaindermen and the beneficiaries of Mrs. Klingensmith's estate are not the same people.

A hearing was held before the magistrate court which determined that the objects of Mr. Klingensmith's bounty were his mother and his wife, not the remaindermen. Based on this principle the magistrate court stated:

Could Lloyd E. Klingensmith intend to give all of the net income to his wife Lourayne and also intend *not* to give her any income that had not been paid out but earned at the time of her death? As far as this court can determine such a contradictory result is the basis of the remaindermen's argument. This court finds that there is no such contradiction in the Will and that the use of the word "accumulated" in the Will does not require this court to reach such a contradictory result. (Emphasis in original.)

Consequently, the magistrate court ordered that the income be distributed to the estate of Mrs. Klingensmith. The magistrate's decision was based on the finding that the terms of the will were consistent with the Uniform Principal and Income Act, I.C. § 68–1001 *et seq.*

The remaindermen filed an appeal from the magistrate's decision with the district court which reversed. Relying on the different definitions of the terms "accrued

income" and "accumulated income," [1] the district court concluded that upon the death of Mrs. Klingensmith, there was no trust to receive any accrued monies which were not paid to the trust prior to Mrs. Klingensmith's death. The court stated:

Upon the death of Lourayne E. Klingensmith the trust was to cease immediately and any monies which were then paid after the death of Lourayne E. Klingensmith were to go to the named remaindermen. This is contrary to the provisions found in the Uniform Principal in Income Act adopted by the Idaho Legislature and found in I.C. § 68-1001 et seq. However, the Act specifically provides that the trust is to be administered "in accordance with the terms of the trust instrument, notwithstanding contrary provisions of this act." I.C. § 68-1002(a)(1). In this case this Court determines that the testamentary intent does differ from the Act and the intent is controlling.

Accordingly, the district court determined that the intent of Mr. Klingensmith was to put all his property in trust for Mrs. Klingensmith to enjoy it during her lifetime, and upon the death of Mrs. Klingensmith, the trust was to terminate and the trustee was to distribute to the remaindermen the income not actually distributed to Mrs. Klingensmith at the time of her death.

West One appeals from the decision of the district court.

In *Matter of Estate of Howard,* 112 Idaho 306, 732 P.2d 275 (1987), this Court stated that it is the intention of the testator which must be given effect when a reviewing court interprets a will. If the language of the document is unambiguous, given its ordinary and well-understood meaning, we will not look beyond the four corners of the will in determining the testator's intent. *Matter of Estate of Howard, supra; Allen v. Shea* 105 Idaho 31, 665 P.2d 1041 (1983). Whether a document is

ambiguous is a question of law over which we exercise free review. *Matter of Estate of Howard, supra.*

With these principles in mind, it is now our task to determine whether the will is ambiguous regarding the question of who was to receive the undistributed income in this case as between Mrs. Klingensmith and the named remaindermen. Our inquiry necessarily begins with the language of the will.

As previously stated, West One relies on language in the will which directs the trustee to "collect and receive all income, revenue and profits arising from, or accruing to, the said trust, and shall pay over and distribute the net income" to Mrs. Klingensmith. On the other hand, the remaindermen point to the language in the will which states that upon the death of both beneficiaries, the trust is to terminate and the "whole of said trust property then remaining, including all accumulated income thereof" is to be distributed to the remaindermen.

Reading the will as a whole, we find this language to be unambiguous despite the different results reached by the magistrate court and the district court, which reached their respective decisions based on a different conclusion as to who was the object of Mr. Klingensmith's bounty. The magistrate court determined that the intent of Mr. Klingensmith was to have the undistributed income go to Mrs. Klingensmith because the magistrate court determined that Mrs. Klingensmith was the object of Mr. Klingensmith's bounty. On the other hand, the district court concluded that there was no indication that Mr. Klingensmith intended to benefit the estate of Mrs. Klingensmith based on the fact that Mrs. Klingensmith was not given any property in the will outright. Therefore, the district court interpreted the will as providing for Mrs. Klingensmith until her death, and

---

**1.** The district court cited *In re Schlinger's Will,* 48 Misc.2d 345, 438, 265 N.Y.S.2d 32, 35 (1965), which defined the terms "accrued income" and "accumulated income" as follows:

The distinction between "accrued income" and "accumulated income" is well recognized.

Accrued income is that earned but not yet due or payable to the trustee, while accumulated income represents that paid to, but not distributed by the trustee.

upon her death, any undistributed income was to go to the remaindermen. However, the better analysis is not to determine Mr. Klingensmith's intent based on an examination of who was the object of his bounty. Rather, a more accurate approach is to interpret the language of the will in light of the common law at the time the will was executed, that being February 26, 1959.

■ Our review of the case law convinces us that Mr. Klingensmith's use of the word "accruing" refers to income earned to the trustee but not yet distributed to the trustee, as well as income which the trustee has received but has not yet paid over to the beneficiary. *In re Schlinger's Will*, 48 Misc.2d 345, 438, 265 N.Y.S.2d 32, 35 (1965) ("Accrued income is that earned but not yet due or payable to the trustee...."); *Phillips Exeter Academy v. Gleason*, 102 N.H. 369, 157 A.2d 769 (1960); Bogert, Law of Trusts 5th ed., § 111 (1973); Fratcher, Scott on Trusts 3rd ed., § 235A (1967). The general rule is that such "accrued income" passes to the life beneficiary's estate upon the life beneficiary's death. *In re New Britain Bank and Trust Co.*, 39 Conn.Supp. 157, 472 A.2d 1305 (Super.1983) (accrued income payable to estate of life tenant); *Crow v. Strome*, 214 Or. 158, 327 P.2d 414 (1958); Bogert, *supra;* Fratcher, *supra.*

■ On the other hand, the reference in Mr. Klingensmith's will to "accumulated income" is consistent with the common law understanding that such income is income which is used, at the discretion of the trustee, to increase the res of the trust, or is held by the trustee and not distributed to the life beneficiary. *In re Schlinger's Will, supra* ("[A]ccumulated income represents that paid to, but not distributed by trustee."); *Crow v. Strome, supra* (accu-

mulated income is that retained and undistributed to life beneficiary); *Byrd v. Caruth*, 520 S.W.2d 849, 852 (Tex.Civ.App. 1974); Bogert, *supra* at § 53. This is particularly apparent where the term "accumulated income" is also used by Mr. Klingensmith in describing the powers that the trustee has in investing and retaining the property of the trust.[2] Such "accumulated income" normally passes to the remaindermen. *Matter of Watson*, 262 N.Y. 284, 186 N.E. 787, 791 (1933) ("The reference to 'principal and accumulation' is sort of a 'stock phrase' and means the accumulation to which the remaindermen are entitled according to the law."); *Matter of Iselin*, 51 N.Y.S.2d 945 (1944) (accumulated income distributed to remaindermen); Bogert, *supra* at § 53.

[5] Accordingly, we hold that the accruing income referred to in Mr. Klingensmith's will encompasses the undistributed income at issue in this case, and under the terms of the will, is to pass to the estate of Mrs. Klingensmith. Thus, we agree with the decision of the magistrate court albeit based on different grounds. *See J.R. Simplot Co. v. Idaho State Tax Com'n*, 120 Idaho 849, 820 P.2d 1206 (1991).

Having determined that the language in the will is unambiguous and is consistent with the common law practice that "accrued income" remaining at the time of the life beneficiary's death goes to the estate of the life beneficiary, and that "accumulated income" goes to the remaindermen, we now must determine whether this result is changed by the application of the Uniform Principal and Income Act (Act), set forth at I.C. § 68–1001 *et. seq.*

■ I.C. § 68–1002[3] sets forth the situations when the Act is to be applied not-

---

**2.** Article THIRD, Section II, of the will provides:

The Trustee, so long as this trust continues, shall have full power, except as hereinafter provided, with respect to the property at any time in her hands, including *income accumulated:*
... (d) To invest any money at any time in the trust in any business ...
... (h) To retain any property or interest in property at any time....

**3.** **68–1002. Duty of Trustee as to receipts and expenditures.**—(a) A trust shall be administered with due regard to the respective interests of income beneficiaries and remaindermen. A trust is so administered with respect to the allocation of receipts and expenditures if a receipt is credited or an expenditure is charged to income or principal or partly to each—
(1) in accordance with the terms of the trust instrument, notwithstanding contrary provisions of this act;

withstanding to the terms of the trust document. We construe this statute as providing that the trust document controls in most situations and that the Act is not assumed to apply. If the trust document has terms contrary to the provision of the Act, the trust document controls. I.C. § 68–1002(a)(1). The trust document also controls when the language of the trust document is clear and unambiguous. *See Matter of Estate of Howard,* 112 Idaho 306, 732 P.2d 275 (1987); *Allen v. Shea* 105 Idaho 31, 665 P.2d 1041 (1983). Only if the language of the trust document is ambiguous and the terms of the trust document are not contrary to the provisions of the Act will the Act apply. I.C. § 68–1002(a)(2). *See also Venables v. Seattle-First Nat. Bank,* 60 Wash.App. 941, 808 P.2d 769 (1991); *Kumberg v. Kumberg,* 5 Kan.App.2d 640, 623 P.2d 510 (1980). Because we find the language of the trust document in this case to be unambiguous, the trust document controls. The Act does not affect the outcome of our decision.

Accordingly, we uphold the decision of the magistrate that the undistributed income in this case is to be awarded to the estate of Mrs. Klingensmith. Costs to Appellant. No attorney fees awarded.

McDEVITT, C.J., BISTLINE, TROUT, JJ., and FULLER, J., Pro Tem. concur.

(2) in the absence of any contrary terms of the trust instrument, in accordance with the provisions of this act; or

(3) if neither of the preceding rules of administration is applicable, in accordance with what is reasonable and equitable in view of the interests of those entitled to income as well as of those entitled to principal, and in view of the manner in which men of ordinary prudence, discretion and judgment would act in the management of their own affairs.

(b) If the trust instrument gives the trustee discretion in crediting a receipt or charging an expenditure to income or principal or partly to each, no inference of imprudence or partiality arises from the fact that the trustee has made an allocation contrary to a provision of this act.